IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| KURUVILLA EDUKUTHARAYIL d/b/a SUPRIYA, INC, FAMY, INC., JAMESKUTTAN, INC., SURYAKUTTAN, INC., ALIYANS, INC. and MINNARA, INC. <br><br> Plaintiff, <br><br> vs. <br><br> FEDERAL DEPOSIT INSURANCE CORPORATION, as receiver and successor in interest to BROADWAY BANK, a Failed Depository Institution, <br><br> Defendant. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | Case No. 12-cv-6254 |

## COMPLAINT

NOW COMES the Plaintiff, KURUVILLA EDUKUTHARAYIL doing business as SUPRIYA, INC, FAMY, INC., JAMESKUTTAN, INC., SURYAKUTTAN, INC., ALIYANS, INC. and MINNARA, INC., by and through his undersigned counsel, SNECKENBERG, THOMPSON & BRODY, LLP, and for his Complaint against the Defendant, THE FEDERAL DEPOSIT INSURANCE CORPORATION, as receiver and successor in interest to BROADWAY BANK, hereby states the following:

### Nature of the Action

1. The matter before the Court stems from a breach of a written escrow agreement between the Defendant's predecessor, BROADWAY BANK and the Plaintiff, KURUVILLA EDUKUTHARAYIL doing business as SUPRIYA, INC, FAMY, INC., JAMESKUTTAN, INC., SURYAKUTTAN, INC., ALIYANS, INC. and MINNARA, INC.

2. This is an adversary proceeding pursuant to 12 U.S.C. 1821(d)(6)(A), to enforce the legal and equitable interests that the Plaintiff had in a certain pre-failure escrow account with BROADWAY BANK.

### Jurisdiction, Venue & Standing

3. This Court has personal jurisdiction over the Defendant insofar as the Defendant, a Federally Chartered Insurance Corporation, is an agency of the Federal government and conducts government business throughout the State of Illinois, including the territorial boundaries of the United States District Court for the Northern District of Illinois, Eastern Division.

4 Per 12 U.S.C. 1821 (2012), this Court has subject matter jurisdiction over the dispute at bar – to wit, the FEDERAL DEPOSIT INSURANCE CORPORATION'S election to disallow the claim of KURUVILLA EDUKUTHARAYIL doing business as SUPRIYA, INC, FAMY, INC., JAMESKUTTAN, INC., SURYAKUTTAN, INC., ALIYANS, INC. and MINNARA, INC.

### Parties

5. At all times relevant herein, the Plaintiff, KURUVILLA EDUKUTHARAYIL doing business as SUPRIYA, INC, FAMY, INC., JAMESKUTTAN, INC., SURYAKUTTAN, INC., ALIYANS, INC. and MINNARA, INC. (Plaintiff or "Seller") was a resident of the City of Naperville, County of DuPage, State of Illinois.

6. At all times relevant, the Defendant, the FEDERAL DEPOSIT INSURANCE CORPORATION (Defendant or "FDIC") was a federally chartered corporation, with offices in, and conducting business throughout the territorial boundaries of the United States District Court for the Northern District of Illinois, Eastern Division.

7. At all times relevant, the predecessor in interest to the Defendant was BROADWAY BANK ("Broadway"), a failed Illinois depository institution with offices in, and conducting business throughout the territorial boundaries of the United States District Court for the Northern District of Illinois, Eastern Division.

### Allegations

8. At all times relevant prior to August 2004, Seller was the owner, in fee simple absolute, of a series of parcels of real estate located at:

    a. 401 North Monroe Avenue, Abingdon, Illinois;
    b. 125 19th Avenue, Moline Illinois;
    c. 1125 North Main Street, Monmouth, Illinois;
    d. 8 North Schulyer Street, Oquawka, Illinois;
    e. 221 East Fort Street, Farmington, Illinois;
    f. 1318 North Lafayette Street, Macomb, Illinois.

(See Exhibit A, Affidavit of Seller, attached hereto and incorporated herein).

9. On or about August 2004, Seller entered into a real estate purchase agreement (the "Purchase Agreement") with Basil Solaqa and Trichy Apartments Partnership (the "Purchasers") relative to the sale of Seller's fee simple absolute interest in the properties identified in Paragraph 10(a) through 10(f), inclusive (the "Properties").

10. Also in connection with Purchase Agreement, Seller disclosed, and Purchaser acknowledged, the release of petroleum hydrocarbons on three of the Properties.

12. Specifically, Seller disclosed, and Purchaser acknowledged, the release of petroleum hydrocarbons by way of Illinois Environmental Protection Agency ("IEPA") incident numbers 980010, 981668, 892759 and 920055 (the "Incident Numbers").

13. The Incident Numbers related to the Properties located, respectively, in Abingdon, Farmington and Monmouth, Illinois.

14. On or about August 4, 2004, a closing took place under the Purchase Agreement and title to the Properties passed from Seller to the Purchasers.

15. Contemporaneous with the closing under the Purchase Agreement, Seller, Purchasers and Broadway entered into an escrow agreement (the "Escrow Agreement") relative to the Properties sold under the Purchase Agreement. (See Exhibit B, a copy of the Escrow Agreement, attached hereto and incorporated herein).

14. Pursuant to the Escrow Agreement, Seller agreed to deposit the sum of Three Hundred Thousand Dollars ($300,000.00) into an Escrow Account to be maintained by the Escrow Agent, Broadway Bank, to ensure Seller's completion of the process to obtain either a "No Further Remediation" or "No Further Action" letter ("the required letter(s)") from the Illinois Environmental Protection Agency ("IEPA"). (See Exhibit B).

15. The Escrow Agreement further provided that upon issuance of all necessary letters, the Escrow Agent shall immediately and automatically refund the balance of the Escrow Fund to the Seller. (See Exhibit B).

16. Pursuant to the Escrow Agreement, the Seller duly caused Three Hundred Thousand Dollars ($300,000.00) to be deposited into an Escrow Account at Broadway Bank. The Seller otherwise fulfilled all of his obligations under the Escrow Agreement. (See Exhibit C, copy of check for deposit into Escrow Account, attached hereto and incorporated herein).

17. Subsequently, Seller obtained the required letter from the IEPA with regard to incident 920055. The Seller expects to receive the required letters for the other incident numbers on or about the end of 2012.

18. Upon information and belief, on April 23, 2010, the Illinois Department of Financial and Professional Regulation closed Broadway Bank and appointed the FDIC as Receiver.

19. Seller never received Notice of the appointment of the FDIC as receiver for Broadway Bank nor any other Notice concerning filing a claim with the FDIC for return of the balance of the Escrow Fund before the Claims Bar Date established by the FDIC (See Exhibit A).

20. Upon learning of the closing of Broadway Bank and the appointment of the FDIC as Receiver in April 2011, Seller submitted a completed Proof of Claim Form and other documentation substantiating his claim for the balance of the Escrow Fund to the FDIC (See Exhibit D, Letter to FDIC from the Becker & Becker Law Firm with enclosures, attached hereto and incorporated herein).

21. Seller further cooperated with the FDIC and provided it with all relevant and required information and materials in connection with the submission of the claim.

22. By letter from the FDIC dated August 16, 2011, Seller was notified that his claim was disallowed on the basis of untimely receipt of the information about the claim.

23. After receiving the August 16, 2011 letter from the FDIC, Seller corresponded with Kirk Kelley of the FDIC and in December 2011, Mr. Kelly advised Seller that there was no time frame exclusion for his claim. (See Exhibit E, E-mail correspondence between Seller and Kirk Kelly, attached hereto and incorporated herein).

24. Seller's claim should be allowed, even though submitted after the Claims Bar Date, because (1) Seller did not receive notice of the appointment of the Receiver in

time to file a claim; and (2) upon information and belief, the claim was filed in time to permit payment of the claim." 12 U.S.C. Section 1821(d)(5)(C)(ii). Additionally, Mr. Kirk Kelley of the FDCI represented to the Seller that there was no time frame exclusion for his claim. (See Exhibit E, E-mail correspondence between Seller and Kirk Kelly, attached hereto and incorporated herein).

25. The FDIC's disallowance of Seller's claim was wrongful and has caused Seller to be damaged in an amount in excess of $100,000.00.

WHEREFORE, the Plaintiff respectfully requests that this Honorable Court enter judgment in his favor and enter an Order requiring the FDIC to allow his claim, and for any and all other relief this Court deems necessary and in the interest of justice.

Respectfully Submitted,

/s/ William J. Sneckenberg

William J. Sneckenberg, Esq.
Emilie G. Kaplan Esq.
**Sneckenberg, Thompson & Brody, LLP**
Attorneys for the Trustee
161 North Clark Street, Suite 3575
Chicago, IL 60601
Phone No. (312) 782-9320
wjs@stbtrial.com
egk@stbtrial.com

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on August 8, 2012, he caused the foregoing Adversary Complaint to be filed electronically through the CM/ECF system and to be delivered to all parties of record.

/s/ William J. Sneckenberg

6